On March 28, 2012, the parties entered into a Memorandum of Understanding after a long, grueling day of mediation. At the end of the day, there was a Memorandum of Understanding that was drafted by the Army, and I signed it. Can I ask a threshold question, which maybe is even despondent? I'm not sure how this Court has jurisdiction. You say at page 9 and at page 13 of your brief that this involves an age discrimination claim and you rely on the provision of the ADA. Aren't cases involving age discrimination claims simply outside our jurisdiction coming from the MSPB? Well, I believe so. I'm not very knowledgeable of all that, but I believe the way that the MSPB got involved is that it's actually a mixed case. The age discrimination was only one part of the claim. Our statute, as interpreted by the Supreme Court, says mixed cases have to go to district court when you're dissatisfied with what the MSPB has done and can't come here. There's a Supreme Court case called Kleckner about two years ago or so now. You still have an age discrimination claim in this case, right? That's what you ultimately continue to want to be adjudicated if you got the settlement undone? If the settlement was undone, that is correct. There would be an age discrimination claim continuing. That is correct. I see. Because the last couple pages of the MSPB's decision, it sets forth the different options for judicial review that you could have in view of the MSPB's decision. If you only wanted to pursue the discrimination claim, the decision tells you to go to the EEOC for that review. If you wanted to continue both claims, both the discrimination claim and the adverse agency action, then you would go to district court. But if you wanted to give up your discrimination claim, then you would take your appeal to the Federal Circuit. So that's what the last couple pages of the MSPB opinion sets forth. So I was trying to understand, by your choice to file your case here at our court, did that necessarily mean that you were abandoning any discrimination claim? I see your point. In my research of it, quite honestly, it was confusing to me as far as where to file the claim and which court actually has jurisdiction. The way that I found it to be is that I did have either option, but it looked like the choice to go to district court was, and to be honest with you, it's been a while. I don't specifically remember, but it seemed like that was not the proper place. The MSPB, it's my understanding, all appeals from the MSPB would come here where the MSPB has jurisdiction. I do understand what you're talking about, but in this claim, age discrimination is one part of it, but there is a mixed case here. It was my understanding, honestly, it could go either one, and it came to this court. Part of that is, I guess, part of my decision, I guess, it started with deciding where am I licensed to practice. Can I ask this question? If we were to get to the point where we thought we lacked jurisdiction, and if we also thought that the right thing to do is to transfer the case to a district court, what district court would we transfer it to? I'm not suggesting I'm actually at that point, or I'm even aware that that's something technically we can do, but on those assumptions. No, I totally understand that. I'm not exactly sure what the proper name of district court would be, but it would be in Fairbanks, Alaska, is where it would be. Whatever district it is that handles that part of Alaska. That's where your brother is? Yes, sir. Of course, that would be a Ninth Circuit Court of Appeals for that. I do understand what you're talking about, and because of Mick's case, I do feel like the appeal was proper here, and the options there were present. But the parties, the memorandum of understanding was drafted, and one of the last paragraphs of the memorandum of understanding clearly says that the parties and their representatives must sign this agreement in order for it to be effective. Just back to the, and you're back on the merits now, but just on the jurisdictional point, was this memorandum of understanding executed sort of under the auspices of the MSPB? I'm sorry, I had an ear infection this week. I'm not sure if I heard the entire thing. Was this memorandum of understanding, I mean, there was mediation here, whatever. Was this done under the auspices of the Merit Systems Protection Board? Yes, Your Honor, it was. It was. The AJ, I believe, that handled the mediation was Lou Neal Anderson out of California, if I remember correctly. But, so we had a long day, and we drafted this agreement, and we came up to an agreement. There's not a question of settlement authority. I believe that's the government's position is that they keep arguing that, well, we haven't questioned the authority to settle the agreement. That's not the question here. There is no question of settlement authority. I will attest to you that I had the settlement authority. But the plain language of the memo says that the parties and their representatives must sign for it in order for it to be effective. So, when you look at that plain language, it requires four signatures. One of the things that the government argues is that there's only two signature lines. Well, that's true, but there's also a half page, a blank page there that other signatures that there's room for. The number of signature lines does not matter. It's the fact that the memo itself says that it's not effective until the latest signature of the party. And which paragraph in the memo are you referring to? Sorry, which memo? Which paragraph in the memo? I want to say it's 14. Maybe it's paragraph 10? 10, I'm sorry. It's paragraph 10. So, at that point in time, we have myself and we have the Army's attorney and their representative for the Army, the party. That is present. At that time, Mr. McNeil is not present. On the Army side, was it Lieutenant Commander McNally? Is that what LTC stands for? Lieutenant Colonel. Lieutenant Colonel, I'm sorry. Lieutenant Colonel McNally, he's the party or is he the representative? He's the party. He's the party. So, in your view, is a second signature wanting on the right hand side as well as the left side? Absolutely. And who would that be? That would be Ms. Abdul-Haq, who represented the Army at the time. And she's the one who wrote up this agreement. And for whatever reason, she put two signature lines. But it's not part of the record, but the actual settlement agreement was forthcoming. And the settlement agreement would outline these terms and would have more language. I can tell you that that settlement agreement is four pages long and it includes four signature blocks. Again, that's not part of the record. Is that a different argument than your first argument? I guess your first argument was this particular document needed four signatures. Yes. And this argument you're now making is, well, this isn't the real settlement agreement. There was a follow-on document that was supposed to be the real settlement agreement. That is absolutely correct. So those are two distinct arguments you're making, right? Same argument, different documents. Different documents, same argument. My contention is this is not a settlement agreement. In no way, no how. However, the contract law says, basic elements of contract law, is that a letter of intent can be held as a contract if you look within four corners of the contract. If you have an offer and you have acceptance and you have consideration, then you have a contract. Well, I agree. We have an offer. We have consideration in this memorandum of understanding. But when you look at the plain language of this memo, it says that it requires parties and their representatives. It requires four signatures. That cannot be acceptance. It cannot be acceptance. Were you the one that filed this document the following day to the MSPB? I am, Your Honor. I am. Is that evidence of something? No, not really. Not that I'm aware of. I'm not sure exactly where your question is going there. I guess my question is, as far as you were concerned as the representative for Mr. McNeil in your representations, or he's bound to, and you filed that with the MSPB, isn't that indicia for everyone else to believe that you believe that this was a binding agreement or a binding document? No, Your Honor. That would detract from what this contract says, or I would say contract this memo says. The parties and their representatives, by the plain language, by any lay person or expert in the law, it requires four signatures. Why did you file it if it was incomplete? If in your view it was incomplete, why did you file it? Because it's a memorandum of understanding. The actual settlement agreement would outline these terms. The actual settlement agreement would outline these terms, and then that is the proper document that would be filed. This is a memorandum of understanding of the terms that we, the general terms that we agreed to during mediation. So we agreed to these general terms, and then the settlement agreement, that actual settlement agreement, which was proposed, not a single signature on it, is four pages long. Obviously that's different than a two and a half page memo. So is it your view that even if there had been all of what you termed the requisite four signatures on this memorandum of understanding, it still would have no force and effect because what you needed was a signed separate settlement agreement? I don't want to say that it wouldn't have any force and effect. It's the power of the party, in this case Mr. McNeil, to revoke the agreement. He would have time to consider. At this point in the mediation, and I see I'm going a little bit into my time. At this point in the mediation, he's no longer present because he had other obligations he had to go. I had settlement authority, no question. But he had power to consider the agreement and revoke it. He never signed the agreement. He never signed the memo. He never signed the actual settlement agreement. And there's case law out there to support that his signature is not necessarily required in order for the agreement to be full force and effect. But in this case, and I agree with that, the language that is in the proposed settlement agreement, I would not have the same argument. That language, nowhere in that agreement does it say the parties and their representatives must sign it. It says the party, and it says the appellant, and terms like that. It doesn't say parties and their representatives, and I think there's a very distinct difference there. Because that, I would have settlement authority to sign on his behalf. And I would, I and my brother would be obligated to that, and that would have full force and effect. But in this case, you go through the plain language of the memo, and it requires four signatures. Okay, why don't we hear from you, Devin, and then we'll get to it in a few minutes. Thank you, Your Honor. Ms. Bartoma. Good morning, Your Honors, and may it please the Court. At the threshold, we understood that Mr. McNeil had waived his claims of discrimination based on the forms filed in the early portion of the case, and some statements in the pre-conference notes in the record of the government's appendix at 20. But based on Mr. McNeil's representations today, that if they, if the case were to go back, they would be pursuing I'm sorry, tell us why you would assume that he had waived his discrimination. As I recall, and I apologize, Your Honors, I do not have the form in front of me, but the form that is filed at the, yeah, Form 10, thank you, Your Honor. I believe that Mr. McNeil had checked on that box that the claims of discrimination had been waived. If I'm incorrect in that regard, then I apologize. But we understood he had waived those arguments, and then in a Well, can we go back and look at that? It might be, where is that in the record? It's not in the, it's a filing with the court done at the inception of the case. It's called Form 10, and it's filed by the petitioner. But then the brief actually relies on waived discrimination. And in, they bring that up, we understood that they were arguing that any mention of the discrimination claims went to the inclusion of the Older Workers Benefit Protection Act, but those are in the agreement itself. If Mr. McNeil intends to raise discrimination claims, though, it would be a mixed case, and this court would be without jurisdiction, and we apologize for not briefing that to the court. Well, if we got to that point, should we transfer this? We think transfer would be futile, but we would not oppose in that instance. He would have to abide by any procedural aspects. I don't believe that the Age Discrimination Act has to exhaust before EEO, but I'm not certain in that regard. If we do turn to the merits, though, this court should affirm the judgment of the board. The board correctly determines this is a valid settlement agreement, and Mr. McNeil has not shown that it is invalid. Mr. McNeil makes clear today that this is not a question of authority. I don't believe that the question of whether this is a valid agreement can be resolved without acknowledging the fact that Mr. McNeil's counsel did have authority to settle on his behalf. You haven't written about Paragraph 10. Paragraph 10 is what I would call ambiguous drafting, but it doesn't alter the conclusion because the board is simply looking for evidence in the record that shows that this is an agreement entered into by those with authority. What if Paragraph 10 said, for this agreement to be binding, it needs the signature of Stephen McNeil, and then there was no signature block for Stephen McNeil, and instead the attorney for Stephen McNeil, Shane McNeil, signed there? Would that be a binding agreement? You would have a different, I think, potential outcome in that case, but here what's very important is there is a specific delegation of authority. I'm sorry, was the answer yes, it would be a binding agreement, or no, it would not be a binding agreement? I think that is a situation where the parties, through knowing and careful drafting that was supported within the remaining four corners of the agreement, that that was what was intended to be the only action which could make it binding, then you could have a different outcome. And it would not be binding? It would be the board's determination to make in the first instance based on the record before it. What do the government think? It would depend on this delegation of authority, because the delegation of authority form that the board uses is a specific delegation of authority to act on behalf of the petitioner, also includes a specific delegation of authority for settlement authority, and specifies that any limitations on that authority would need to be filed with the board. And in this instance, if a petitioner had filed with the board, there is no settlement authority here, any agreement would need to be signed by myself, a petitioner could do that. But it's undisputed in this case that Mr. McNeil didn't do any of that. And it's important that the board is able to rely on this, and in fact that's something this Court has acknowledged in Amin, is that it's important that when chosen counsel appears, that the board is able to rely on the authority of those, and this is needed for predictability, reliability, the finality of settlement, because the board can't be expected to monitor any specific but unknown contours of authority. If the parties wanted to draft an agreement that was completely clear on its face, that it could not be effective, the parties could do so. But that is not what the parties did in this instance. There are only two signature blocks which are fully executed. Mr. McNeil's counsel had authority to execute it on his behalf. And this is different than, for instance, from the Master Giuseppe case. There, the board looked at it and found that because there were four signature blocks and they were not all completed, there was not evidence that would show the intent of the parties to be found. In this case, the board looked at it and found that the parties had intended to be found. And that's supported by the substantial evidence here of the completed signature blocks, especially when combined with the specific delegation of authority. I'm not sure that the petitioner here makes anything of Section 6G about the seven-day revocation right. Is your understanding that the first statement by Mr. McNeil that he wanted out of this came beyond the seven-day period? We don't know when that statement came. The request for what he calls a variance, we would say that no matter the timing of it, it's not an unequivocal revocation. My understanding from speaking with the agency is when agreements are revoked, they are revoked unequivocally. For instance here, when the agreement had been filed with the board, particularly by Mr. McNeil himself, and the entry is designated the settlement agreement, we would anticipate seeing something that had been filed with the board or something in writing anywhere in the record, that this was not an agreement to which the parties wished to remain found. But the record doesn't indicate that whenever it was within those seven days that there was whatever – at some point there was an expression, I want out, never mind the terms. I don't believe, Your Honor, that there was necessarily an expression of I want out. What I'm aware of is that – That's what he's saying here. He's saying this is not – I don't want to be found by this agreement. Well, that's his argument now, but it's also at this point – And he made that to the board, right? Well, before the board, he waited. There was the seven-day period, and then there was another 12 days before anything was filed with the board. And that's kind of the situation of more buyer's remorse or a change of heart. When, I believe it's at the appendix, petitioner's appendix, I believe page 30, agency counsel reports that Mr. McNeil wanted to add additional language to the agreement, that he wanted to change the wording that would be used in the letter of reference. That's a far cry from at that point stating I revoke this agreement. And when was that document? There's no – the document that's at petitioner's appendix at 30 is a declaration of agency counsel before the board. It does not give any dates, however, as to when any statements would have been made. There's nothing written in the record. And that is, again, a far cry from an unequivocal revocation at that point. Well, just to be clear, the agreement does not say anything about equivocal or unequivocal. It says he can revoke it within seven days. He could revoke it. There's no mention in the record, though, of a revocation. It's simply he wished there to be additional language used in the letter of reference. And then the agency is clear that it did not agree to that at any point. And then, again, Your Honor, it is then another 12 days before anything is filed with the board. So there is a time lag there. And when all of the circumstances of the agreement being signed, being filed with the board by Mr. McNeil, then an additional seven days before the dismissal, any point during which he could have filed something, and then an additional 12 days, there's record evidence that would really show this is more the case of a change of heart or a buyer's remorse situation, and that's in this court in Gibson acknowledged that would not be a situation to invalidate a settlement agreement. Rather, a fraud, mutual mistake, invalidity would be necessary. And Mr. McNeil has not shown that at any stage of the proceedings. If there are no further questions for these reasons and those in our brief, we would ask that this court determines there is a jurisdictional problem, of course, that would be the appropriate dismissal. Otherwise, to affirm the judgment of the board. Can I just follow up on Judge Taranto's point about if we decide to do that? So you mentioned you weren't clear on whether or not we would be transferring this to a district court. I apologize, Your Honor. It is not my area. Agency counsel and I were conferring briefly. We do not believe that there would be a necessity to exhaust before the EEO on an age discrimination claim, but if there is a requirement, we certainly could not waive it through our statements today. Were the court to transfer as an appropriate thing, while we believe it would be futile, we would not oppose. Thank you. Thank you. I'll just go briefly. She does bring up the Form 10, I believe it is, and I honestly, I don't remember one way or the other, but I believe she is correct. That was likely filed, and if my recollection serves me right, then the reason why the age discrimination items are brought up is strictly a matter of the language in the statute. As it pertains to the individual and the definitions, because that is... I guess I think the important question is, do you at this moment declare that there is no longer an age discrimination claim in the case, so that if we, as a result, had jurisdiction, and if we were to agree with you on undoing the settlement agreement, that when you went back, you would not be able, at that point, to assert age discrimination as a basis for challenging the adverse action? Yes, I am prepared to do that. Yes, so I will declare that the age discrimination is not a claim. The language in the statute is that an individual must waive those claims, and that is really where the brief was going, where it does require the individual's waiver. Real quickly, I don't believe the memo is ambiguous at all, other than the fact that it does require four signatures and there are only two signature blocks. Where it is ambiguous, it is to be construed against a drafter. And the government's argument on that is that if it is fully negotiated, well, still, I believe that particular term was not necessarily negotiated, but I don't believe there is anything one way or the other in the record. The unequivocal revocation, his not signing would be unequivocal revocation where it is required. Thank you.